LUTHERAN ALTENHEIM SOCIETY OF MISSOURI, a Corporation, and LUTHERAN CHARITIES ASSOCIATION OF ST. LOUIS, MISSOURI, a Corporation, Plaintiffs-Respondents, v. HARRY C. YOUNGHOUSE, ELSE E. HELD, and HERBERT NIEMEYER, Defendants-Appellants, LULU NIEMEYER, EMIL FIENUP, LORENE W. KELLER, FRED FIENUP, JULIA MAETTEN, ELMER F. PICKER, NORMAN PICKER, THEODOR PICKER, KENNETH PICKER, BETTY SMITH, IRMA MILLER, and WILMA M. KUHN, Defendants, No. 43692—275 S. W. (2d) 361.

Court en Banc, February 14, 1955.

*Arnold J. Willmann* and *John A. Nolan* for appellants.

*George Eigel* and *Albert Miller* for respondents.

[361] WESTHUES, C.—The plaintiff corporations, Lutheran Altenheim Society of Missouri and Lutheran Charities Association of St. Louis, Missouri, filed this suit to try and determine title to certain real estate, located in the City of St. Louis and in St. Charles County, Missouri, claiming to be the absolute owners in fee thereof by virtue of the last will and testament of Clara L. Fienup, deceased.

The defendants named in the petition were the collateral kinsmen of the testatrix. They were Harry C. Younghouse, Else E. Held, Lulu Niemeyer, Herbert Niemeyer, Emil Fienup, Lorene W. Keller, Fred [362] Fienup, Julia Maetten, Elmer F. Picker, Norman Picker, Theodor Picker, Kenneth Picker, Betty Smith, Irma Miller, and Wilma M. Kuhn. A number of these defendants filed an answer to the petition; others defaulted. By the answer, the defendants claimed an undivided one-half interest in the property as heirs of the testatrix, contending that by the last will and testament the plaintiff corporations received only a one-half interest in the property; that Clara L. Fienup died intestate as to the other one-half interest. A trial was had before the court and the court entered a decree for plaintiff corporations on the theory that by her last will and testament the testatrix devised a one-half interest to each corporation. From that judgment, the defendants Harry C. Younghouse, Else E. Held, and Herbert Niemeyer appealed.

The question before the trial court was and on this appeal is whether the plaintiff corporations by the fifth clause of the will each received a one-half interest in the property or whether they received

only a one-half interest jointly and that testatrix died intestate as to the other one-half. The clause of the will reads as follows:

"Fifth: Upon the death of my son, Clarence, this trust shall cease, and one-half (½) of the trust estate then remaining shall go to the Lutheran Altenheim of the City of St. Louis, Missouri, and the Lutheran Orphans Home, at the present time situate at Des Peres, St. Louis County, Missouri. Should either organization not be in existence at such time, then the interest hereby bequeathed to it shall go and belong to its successor; should there be none, then the said trustees, or the surviving trustee, shall designate either some deserving Orphans Home or some deserving Old Folks Home as beneficiary."

The testatrix died on January 14, 1949. Her son Clarence T. Fienup died on June 1, 1951. The property involved in this suit was, after the son's death, delivered to the plaintiff corporations and was in their possession at the time this suit was filed and at the time judgment was entered.

The appellants say in their brief that "Since there was no evidence, oral or documentary, before the trial court, other than the will itself, the Court erred in finding that it was the intention of the testatrix by clause fifth, to dispose of the whole of her estate to respondents, instead of only one-half thereof." (Citing cases)

The respondent corporations say that "The intention of the testator must appear in the formal instrument, and extrinsic evidence cannot be resorted to to ascertain the intention of the testator." (Citing cases) Respondents say that the clause is susceptible of being construed as a testamentary disposal of the whole estate and therefore must be so construed because the law presumes that in case of a will, the testator disposed of his whole estate unless the language of the will clearly indicates otherwise.

■ The controlling rule in construing wills is to ascertain the intention of the testator. Such intention must be gathered from the will itself. However, courts in determining the intention of a testator may consider the surrounding circumstances. The rule is stated in 69 C.J. 63, Sec. 1120, as follows: "In determining the testator's intention the court should place itself as nearly as possible in his position, and hence, where the language of the will is ambiguous or doubtful, should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed, * * *." See Heard v. O'Dell, 335 Mo. 202, 72 S.W. (2d) 491, l.c. 494 (1); Taylor v. Hughes, Mo., 251 S.W. (2d) 94, l.c. 99 (4, 5); First National Bank of Kansas City v. University of Kansas City, Mo., 245 S.W. (2d) 124, l.c. 127 (1-4).

■ The rule as to the presumption against intestacy is well stated in 69 C.J. 91, Sec. 1147, where it is said: "Either in the absence of statute, or under statutes declaratory of the common law, there is

[363] a presumption that a testator intended to dispose of his entire estate and not to die intestate either as to the whole or as to any part thereof, and where a provision of a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of the estate will not be adopted if by any reasonable construction it can be avoided; * * *.'' See also Smoot v. Harbur, 357 Mo. 511, 209 S.W. (2d) 249, l.c. 251 (1-3); Meiners v. Meiners, 179 Mo. 614, 78 S.W. 795.

With these rules in mind, let us examine the present will to determine the intent of the testatrix as expressed in clause "Fifth" of her will. It is true the trial court did not hear any oral evidence. However, we may ascertain to some extent the situation of the testatrix from the will itself and from the pleadings and admissions made in the record.

Testatrix, at the time she executed her will on September 12, 1936, was a widow and she had only one child, a son. By her will, she gave $400 to a cemetery association to provide perpetual care for the family burial lot. By the next clause, she gave *all* of her personal effects to her son Clarence T. Fienup. She expressed the desire that in case her son did not care to keep all of the household goods, such goods should go to her niece, Mrs. Herbert Held, and to her nephews, Harry C. Younghouse and Herbert Niemeyer.

By the fourth clause, she gave *all* of the remainder of her property, real, personal and mixed, to the St. Louis Union Trust Company and her nephew Herbert Held in trust for her son. The son was to be paid certain amounts periodically and more in case of an emergency. She gave the trustees power to sell her property and to reinvest the proceeds in other property. She expressed a desire that a farm of 176.62 acres located in St. Charles County, Missouri, not be sold since it was her opinion that the farm would increase in value. Then came the fifth clause which we have heretofore set forth in full. Note that by that clause testatrix provided that in case either of the plaintiff corporations should not be in existence at the time the trust ceased, the trustees should designate some other deserving organization of like nature as a beneficiary.

Considering the situation of the testatrix at the time the will was made and that she minutely detailed how her property should be disposed of, it is inconceivable that she intended to die intestate as to any of her property. Note that in the disposition of her personal effects she expressed a wish that such of the household goods as her son should not wish to keep should belong to her niece and two of her nephews who are appellants in this case. Note, too, that in disposing of her property, she used terms which were all inclusive, as, for example, in the third clause, ''All of my personal property, household goods and personal effects of every kind and description,'' and in the fourth clause, ''All the rest, residue and remainder of my estate,

both real, personal and mixed, of every kind and description * * *."
Then, in the fifth clause, it is significant that she provided for the disposition of the property should either of the corporations not be in existence at the time the trust ended. Would it not be strange if testatrix by her will made an alternative disposition of household goods not wanted by her son and left one-half of her estate undisposed of?

Courts have dealt with questions of this nature in the past and such cases may be used as a guide in this case. Note in Meiners v. Meiners, supra, the clause under consideration was very much like the clause now before us. It read (78 S.W. l.c. 796): " 'Item. 4. I will, give, bequeath and devise to my sons, John, Herman, Jr., and Aloysius, the undivided one-third in all my real estate, * * *.' " This court held that considering the will as a whole, it clearly appeared that the testator intended to dispose of all his property, therefore, by Item 4 he devised a one-third to each of his three sons named. That case has been cited with approval by this court and very recently by this court en banc. See Smoot v. Harbur, supra.

It is clear from the will as a whole that it was the desire of testatrix that her [364] property should ultimately go to the charitable corporations designated by her will. Even her own son did not receive any real estate in fee. In fact, he was not given a full life interest but only certain stipulated amounts, that is, $30 per month and maintenance. Any balance of the income from the trust estate was to be added to the principal of the trust estate. The provisions of the will are repugnant to any intention on the part of testatrix that as to a one-half interest she made no provision and that her nieces and nephews should inherit that half of her estate.

The trial court was correct in ruling that each of plaintiff corporations received a one-half interest by the fifth clause of the will.

Defendants cite a number of cases to sustain their theory. For example, Crowson v. Crowson, 323 Mo. 633, 19 S.W. (2d) 634; Hill v. Hill, 261 Mo. 55, 168 S.W. 1165; and Mississippi Valley Trust Company v. Bowler, Mo. App., 149 S.W. (2d) 379. In those cases, the courts· held that the makers of the wills clearly indicated that their entire estate was not disposed of. Note what the court said in the Bowler case, 149 S.W. (2d) 381, 382 (5): "We think it clear that the testatrix knew and intended that she was not disposing of all of her property by the will, and that she would die intestate as to a part thereof. We have given due consideration to the rule as contended for by appellant, to the effect that ordinarily a testator is presumed to intend to dispose of his whole estate. However, such presumption is only indulged by the courts when it appears consistent with the intention of the testator, but, when the will shows a contrary intention, that presumption fails. Crowson v.

Crowson, 323 Mo. 633, 19 S.W. 2d 634; Allison v. Hitchcock, 309 Mo. 488, 274 S.W. 798, and cases therein cited.''

The court in its decree made the findings of fact wherein it was stated that testatrix by the fifth clause of the will intended to say that ''Upon the death of my son, Clarence, this trust shall cease, and one-half (½) of the trust estate then remaining shall go to the Lutheran Altenheim of the City of St. Louis, Missouri, and *one-half (½) to* the Lutheran Orphans Home, * * *.'' The words italicized were interpolated by the court. Appellants say the trial court was in error in placing these words in the will of the testatrix. It is not an important point. In fact, that was simply a way the trial court used in expressing what was intended by the will. Respondents in oral argument stated it would have been better not to have inserted these words and suggested the decree be modified to that extent. If the trial court so desires, the modification may be made. We do not deem the matter of sufficient importance to order a modification.

Having concluded that the trial court correctly decided the case, we hereby affirm the judgment.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the Court en Banc. *Dalton, Hollingsworth, Hyde, Ellison* and *Westhues,* JJ., concur; *Leedy,* J., and *Cave,* Special Judge, dissent, and adopt the dissenting opinion of *Barrett,* C., in Division Two as their dissenting opinion.

### MEMORANDUM OF DISSENT

BARRETT, C.—In this case, unlike Meiners v. Meiners, there are no extrinsic circumstances. In [365] this case only the will itself was before the court and the language of clause five is so plain and unambiguous that there is nothing to interpret,—''Upon the death of my son, Clarence, this trust shall cease, *and one-half (½) of the trust estate then remaining* shall go to the Lutheran Altenheim of the City of St. Louis, Missouri, and the Lutheran Orphans Home * * *.'' Thus in words and meaning as plain as the English language is capable of expressing the testatrix, in this clause, disposed of ''one-half (½) of the trust estate then remaining.'' In the Meiners case one word in the clause in question, *''the,''* created the difficulty. Furthermore the clause under consideration there referred to ''one-third *of all my estate.''* There is no such ambiguity or reference in clause five of this will.

Likewise in Smoot v. Harbur, as was pointed out in Lang v. Estorge, (Mo.) 242 S. W. (2) 50, there was an ambiguity in the will and its meaning was made clear by extrinsic evidence and other provisions of the will. It is true that in clause four the testatrix disposes of all her property—''All the rest, residue and remainder of my estate, both real, personal and mixed, of every kind and description and

48

wheresoever situate * * *.'' But there she was creating a trust, a trust for the benefit of her son. His circumstances are not known and the reason for the trust is clothed in mystery. It is assumed from the fact that he only is mentioned or provided for that he was an only child, and he was certainly the natural object of her bounty. In clause five the trust terminated upon his death but only ''one-half'' of the trust estate is disposed of. As we have said, there was no ambiguity and therefore the presumption against partial intestacy and the auxiliary rules of construction are not appropriately applicable. 2 Page, Wills, Sec. 927, p. 848; 57 Am. Jur., Secs. 1158-1159. Clause four has no relation to clause five and resort to the other clauses in the will does not explain clause five or indicate an intention on the part of the testatrix to dispose of all her property to the specifically named organizations. Whatever the testatrix may have intended, it can only be said that there is no ambiguity in the language employed, it is not subject to interpretation and in unmistakable language disposes of ''one-half (½) of the trust estate then remaining'' and as plainly written and expressed should be construed. Lang v. Estorge, supra. For these reasons I respectfully dissent.