In the Matter of the Estate of Major W. NAYLOR, Willis E. Naylor, Individually and as Executor of Estate of Major W. Naylor, Frances J. Naylor, George Frank Naylor, Richard S. Naylor, Rudy Naylor, and Virgie Hadju, Appellants,

v.

Dorothy KOEPPE, Charlesetta Mumma, Patricia Parker and Charles H. Meyers, Jr., Respondents.

No. 48196.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 13, 1985.

Joseph J. Simeone, St. Louis, for appellant.

Richard Samuel McConnell, Jr., Clayton, for respondent.

STEPHAN, Judge.

This is an appeal by Willis E. Naylor, as executor of the estate of Major W. Naylor and individually, and by other statutory heirs of the decedent from a judgment of the Probate Division of the Circuit Court of the City of St. Louis construing the will of the decedent. We reverse and remand.

After providing for the payment of debts and burial arrangements, the will in question states that "all the rest, residue and remainder of my estate" is devised and bequeathed:

to my dear wife, Betty P. Naylor, provided however, if my said wife and I should perish in a common disaster, or if she should die within thirty (30) days after me from injuries or effects of a common disaster from which I met my death, then I make instead the following provisions for distribution of said residue of my estate that my said wife would have taken had we not died from such a common disaster:

1. Said estate shall be divided into halves, and shall go as follows ...

The will then provides that each half shall become the corpus of a trust. The beneficiaries of the trusts are testator's mother and his wife's mother respectively. The income from each trust is to be paid to each beneficiary during her life. Upon the death of each beneficiary, the principal of the trust is to be paid in equal portions, free of trust, to certain, named remaindermen. With respect to the trust created for the benefit of testator's mother, the remaindermen are testator's six siblings. Similarly, the trust created for the benefit of testator's mother-in-law names as remaindermen testator's wife's siblings. In the event that either the mother or the mother-in-law did not survive the testator, the will provides that the half of the estate which would have been the principal of the trust passes directly to the remaindermen named in each trust. No children had been born of the marriage of testator and his wife.

As may be seen from the provision splitting testator's residuary estate in half, all of the provisions relating to the creation of the trusts and benefits to the remaindermen are contingent upon the death of testator and his wife in or as a result of a common disaster. This did not happen. Testator's wife, Betty, died in August, 1978; and testator died in February, 1981, both of natural causes.

In his petition for approval and final distribution, the executor-appellant submitted that testator had died intestate as to the residue of his estate and sought an order destributing the residue to the heirs at law. After a hearing, the probate court entered an order finding "the language of the testator, taken with all the known circumstances, indicated his intention that the will remain operative as to his estate after the death of his wife from natural causes." Accordingly, the court ordered that one-half of the residue be paid to Willis Naylor as trustee for testator's mother, who was then living, with the remainder to testator's six brothers and sisters. The court also ordered that the remaining half be distributed in equal shares to the wife's four siblings as the testator's mother-in-law had predeceased him.

In its order, the probate court stated that it "considered limited extrinsic evidence of the surrounding circumstances to identify and determine the persons who would be the object of decedent's bounty." Such evidence included the fact that testator's wife greatly assisted testator in the operation of his tavern and had worked closely with him in amassing his estate; that the wife's will, executed on the same date as testator's, was reciprocal and "mirrors the terms of testator's will." From such factors, the court concluded that testator, in

spite of the express words of the "common disaster" contingency, wanted his wife's siblings to share in his estate.

Such extrinsic evidence may be admitted to resolve latent and, under certain circumstances, patent ambiguities in wills. *Breckner v. Prestwood,* 600 S.W.2d 52, 55–56 (Mo.App.1980). However, the determination by a trial court that an ambiguity exists where, as here, the factual disputes are minimal, are not accorded "the deferential treatment on review afforded factual resolutions under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *Zaharopoulos v. H.P. Sprenger,* 605 S.W.2d 143, 146 (Mo.App.1980); *Helmer v. Voss,* 646 S.W.2d 738, 742 (Mo. banc 1983). Whether an ambiguity exists is a question of law for the trial court, *Zaharopoulos,* supra, and an appellate court may appropriately make its own determination of the issue. *Helmer,* supra.

In the instant case, the trial court did not find an "ambiguity," rather, it found that "the problem presented by this will is patent." To resolve such "problem" the extrinsic evidence was admitted. While we find the evidence less then compelling, we base our determination here upon our holding that no ambiguity exists.

Apart from the formal provisions in the opening lines of the will relating to the payment of debts and burial arrangements, the bulk of the testator's estate is left to his wife *unless* he and she die in or as a result of a common disaster. Only in the event of such occurrence is the estate divided in half; only in such event are benefits conferred upon the wife's family members.

It has long been recognized in this State that the operation of a will may be conditioned upon the happening of a certain event and that, if the event does not occur, the will is inoperative. In *Robnett v. Ashlock,* 49 Mo. 171, 172 (1872), the dispositive provisions of a will were based on the testator's fear that he would die during an impending trip: "I this day start to Kentucky; I may never get back. If it should be my misfortune, I give my property to

..." The testator did return to Missouri where he lived for thirteen years before his death, and the Court held the will inoperative. Recently, our Supreme Court, citing *Robnett,* reaffirmed the principle that, "It is perfectly possible to execute a will which has no effect at all unless a specified condition is performed or occurs. If such a condition is expressed, it will be enforced." *Helmer v. Voss,* 646 S.W.2d 738, 742 (Mo. banc 1983).

*Helmer* involved the will of a husband and wife which recited at the outset:

ITEM II: All of our property of any kind and character is at the present time so arranged that it will pass unto the other party in the event of the death of one of the parties herein. Therefore, the purpose of this will is to devise and bequeath the property of the parties in the event of a common disaster to both John Robert Greener and Cecile M. Greener.

There then followed a number of specific items relating to various persons and entities for whom the testators wished to provide. Some of these items were prefaced with conditional language relating to the testators' dying in a common disaster; other items were unconditional statements of gift. The testators died within a short time of one another, but not as a result of a common disaster.

Four members of the Supreme Court agreed that:

[I]tem II does not say in so many words that the document is to be totally ineffective only if John and Cecile die in a common disaster. If this were the intention, it could be expressed much more clearly. The language may well be interpreted as stating a purpose rather than as establishing a condition.

The majority, therefore, concluded that the bequests which were specifically conditioned upon the testators' dying in a common disaster were not to be effectuated, and the estate was disposed of through the unconditional bequests. The three dissenting judges were of the view that the contingency of common disaster referred to in

Item II made the operation of the entire will conditioned upon a common disaster.

■ We have no such problem here. The testator clearly and unambiguously stated that he left everything to his wife, *"provided however, if* my said wife and I should perish in a common disaster, ... then I make instead the provisions ..."* (Emphasis added.) As the Supreme Court said in *Robnett*, supra, " 'If' may be a small word, but all know its meaning, and instead of a more formal phrase it is used in common language to express condition or limitation; ..." 49 Mo., at 175. So it is here. Cognizant though we are that courts "are disposed to adopt any reasonable construction which will avoid intestacy," *Helmer*, supra, 742, we may not, under the guise of "construction," ignore the pellucid import of the testator's words.

Accordingly, the cause is reversed and remanded to the Probate Division of the Circuit Court for disposition in accordance with the provision of the will relating to the payment of debts and funeral expenses and the statutes relating to descent and distribution of property as to which a decedent dies intestate. § 474.010, RSMo, et seq.

SIMON, P.J., and SCHOENLAUB, J., concur.