In the ESTATE OF Naomi
SWEENEY, Deceased.

Bonnie WHITE, Personal Representative
of the Estate of Naomi Sweeney, De-
ceased, and Bonnie White, Individually,
Plaintiff–Respondent,

v.

Donald SWEENEY, Personal Representa-
tive of the Estate of Naomi Sweeney,
Deceased, and Donald Sweeney, Individ-
ually, Defendant–Appellant,

and

Peggy Long, et al., Defendants.

No. 19688.

Missouri Court of Appeals,
Southern District,
Division Two.

May 3, 1995.

Rehearing Denied May 25, 1995.

Kenneth A. Seufert, James M. Willis, Farmington, for appellant.

Charles W. Medley, Farmington, for respondents.

**CROW, Judge.**

This action to construe the will of Naomi Sweeney was brought by Bonnie White, a "Co–Personal Representative" of the Estate of Naomi Sweeney, Deceased. Ms. White sued in her representative capacity and also individually as an heir of Naomi Sweeney. One of the six defendants was Donald Sweeney (the other "Co–Personal Representative") in his representative capacity and also individually as an heir of Naomi Sweeney. The other defendants were the remaining heirs[1] of Naomi Sweeney.

 The trial court held that because the only two devisees in the will predeceased Naomi Sweeney ("Decedent"), the estate would be distributed as if Decedent had died intestate. Donald Sweeney appeals.[2]

The case was submitted to the trial court on the pleadings and responses to requests for admissions. From those sources we marshal the following facts.

Decedent signed her will January 22, 1963. Paragraph I of the will dealt with payment of debts. The next two paragraphs read:

"II.

I give, devise and bequeath all the rest, residue and remainder of my property, real and personal, wherever situate, and whether acquired before or after the execution of this Will, in equal shares, to my brothers, Henry Sweeney and Harry Sweeney, as tenants in common, provided they survive me; but if one of them shall fail to survive me, then I give all of said property to the survivor.

III.

Various shares of stock and savings accounts are now owned by me and my brother, Henry Sweeney, as joint tenants with right of survivorship, and upon my death all of my interest in said accounts and shares of stock shall go to my brother, Henry Sweeney, as the survivor, provided the said Henry Sweeney shall survive me."

Paragraph IV of the will (the final numbered paragraph) designated an executor and a replacement executor, and provided no bond should be required of either.

Henry Sweeney (named in paragraphs II and III) died January 12, 1972.

Harry Sweeney (named in paragraph II) died January 18, 1986.

Decedent died October 29, 1991, without issue, but with seven heirs:

Donald Sweeney ("Appellant") and his sister, Peggy Long, children of Harry Sweeney.

Bonnie White (who filed this suit) and her brother, James Sweeney. They are children of William Sweeney, a brother of Decedent. William died in 1955, more than seven years before Decedent made her will.

Ruth Key, Mary Jane Dierker and Dorothy Hill, children of Maggie Hall, a half-sister of Decedent. Maggie died in 1963.

Henry Sweeney, who (as noted earlier) died January 12, 1972, left no issue.

In addition to the kin previously identified, Decedent had two half-brothers, Don Robson and James Robson. Don died in 1958, James in 1968. Neither left issue.

The trial court held, *inter alia:*

"3. That according to the terms of [paragraph] II of said ... Will ... the

---

1. We use the term "heirs" to refer to persons entitled to receive the property of an intestate decedent under the statutes of descent and distribution, chapter 474, RSMo1986. *Thomas v. Higginbotham,* 318 S.W.2d 234, 238–39 (Mo. 1958).

2. The notice of appeal indicates he appeals not in his representative capacity, but only individually.

It has been held that an executrix has no standing to appeal from a judgment construing a will, *In re Estate of Soengen,* 412 S.W.2d 533 (Mo.App. 1967), and that an executor has no standing to appeal from a judgment in a will contest declaring the will invalid, *Shock v. Berry,* 221 Mo.App. 718, 285 S.W. 122 (1926).

legatees, Henry Sweeney and Harry Sweeney, were to share in Decedent's estate only if they, or either of them, survived Decedent. [Decedent's] intent is clear in that she wishes to provide for either one or both of her brothers provided that they survive her.

4. That the operation of a will may be conditioned upon the happening of a certain event, and, if the event does not occur, the will is inoperative. *In re Estate of Rau,* (Mo.App.1986) 708 S.W.2d 746, 748.

5. That the survival of either of the legatees, Henry Sweeney and/or Harry Sweeney, is the condition precedent to making the devise operative.

6. That since neither legatee, Henry Sweeney or Harry Sweeney, survived Decedent, ... and there are no other named legatees to take under her Will, the condition precedent was not met, the devise is inoperative, and Decedent's estate is to be distributed under the general rules of Descent and Distribution set forth in Sec. 474.010 RSMo. as if she had died intestate."

The first of Appellant's two points relied on asserts the trial court erred in holding paragraph II of the will inoperative. Appellant maintains paragraph II "is ambiguous and, as such, the [trial] court was required to adopt any reasonable construction of the will to avoid intestacy." Appellant cites *Prior v. Prior,* 395 S.W.2d 438, 442[2] (Mo.1965), which explains that where there is an ambiguity in a will, there is a rule of construction whereby courts give preference to a construction which will prevent partial intestacy, rather than one which will permit it, if such construction may reasonably be given.

Respondents[3] insist that *Rau,* 708 S.W.2d 746, relied on by the trial court, compels us

to affirm the judgment. The will in *Rau* contained a paragraph devising the residuary estate to the testatrix' brother and her three sisters. The paragraph then provided:

"... in the event my brother or any of my sisters shall predecease me, his or her share shall be divided equally between the living legatees named in this paragraph...."

*Id.* at 746–47.

The brother and all three sisters predeceased the testatrix in *Rau.* The trial court ordered that the residuary estate be distributed to the lineal descendants of the brother and three sisters, per stirpes, relying on § 474.460, RSMo Cum.Supp.1984, the anti-lapse statute.[4]

The Eastern District of this Court reversed, concluding that by using the words "between the living legatees," the testatrix intended that the named legatees take only if they outlived her. 708 S.W.2d at 748. That conclusion was buttressed by the absence of a provision in the will substituting anyone in place of any of the four named legatees. *Id.* The Court held: "A bequest to a predeceased legatee lapses where the testatrix expressly intends that the gift lapse." *Id.* The opinion continued:

"In addition, the operation of a will may be conditioned upon the happening of a certain event, and, if the event does not occur, the will is inoperative. *Naylor [v. Koeppe* ], 686 S.W.2d [47], 49[4] [ (Mo.App. 1985) ]. Here, survival of the legatees was the condition precedent to making the devise operative. The condition was not met; the devise is inoperative. Accordingly, the anti-lapse statute does not apply to save the devise."

*Rau,* 708 S.W.2d at 748[4].

Respondents argue Decedent intended that (1) Henry Sweeney survive her in order

3. In the trial court, lawyer Charles W. Medley represented Bonnie White, who filed this suit. He also represented James Sweeney (Ms. White's brother), Mary Jane Dierker and Dorothy Hill. In response to Appellant's brief, Mr. Medley filed a "Brief for Respondents." We assume that brief was on behalf of the quartet Mr. Medley represented in the trial court.

4. Section 474.460, RSMo Cum.Supp.1984, was carried forward unchanged in RSMo1986. It reads:

"When any estate is devised to any child, grandchild or other relative of the testator, and the devisee dies before the testator, or is treated as if he predeceased the testator, leaving lineal descendants who survive the testator by one hundred twenty hours, the descendants shall take the estate, real or personal, as the devisee would have done if he had survived the testator by one hundred twenty hours."

to receive anything from her estate, and (2) Harry Sweeney survive her in order to receive anything from her estate. Said another way, Respondents' premise is that survival was a condition precedent, and inasmuch as neither Henry nor Harry survived Decedent, the condition precedent never occurred, hence the devise in paragraph II never became operative.

■■■ The objective in this action is to ascertain Decedent's intention. *First National Bank of Kansas City v. Danforth*, 523 S.W.2d 808, 816[1] (Mo.1975), *cert. denied, sub nom., Sutt v. First National Bank of Kansas City*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975) and *Lakeside Hospital Association v. First National Bank of Kansas City*, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). If Decedent's intention is plain and unambiguous, such intention must govern, provided it is not contrary to law. *Id.*, 523 S.W.2d at 816[1]. The function of the court is to construe the will as written and not to make or rewrite one for Decedent under the guise of construction. *Id.* at 816[3].

There is a semicolon in paragraph II of Decedent's will. For convenience, we shall refer to the portion of paragraph II which precedes the semicolon as "the first clause," and to the portion which follows the semicolon as "the second clause."

The first clause of paragraph II is not ambiguous. Had both Henry Sweeney and Harry Sweeney survived Decedent, each would have received half of Decedent's property as a tenant in common with the other. However, that scenario did not occur, and the first clause is silent about who shall receive Decedent's property if (as happened here) she outlives both Henry and Harry.

Appellant recognizes the first clause is unambiguous. He adds, and we agree: "Since both brothers failed to survive [Decedent], this section of [paragraph] II fails."

Appellant then proceeds to the second clause which, according to him, is ambiguous. As we fathom his argument, he maintains the second clause can be reasonably construed to mean: (1) if either Henry or Harry predeceases Decedent, the surviving brother must outlive Decedent as a condition precedent to the devise in the second clause becoming operative, or (2) if either Henry or Harry predeceases Decedent, the surviving brother need not outlive Decedent as a condition precedent to the devise in the second clause becoming operative. Under the latter construction, all of Decedent's property would go to whichever brother died last, irrespective of whether he survived Decedent.

Appellant acknowledges that Harry, who outlived Henry by 14 years, had been dead almost six years when Decedent died. However, says Appellant, inasmuch as Harry outlived Henry, Harry's "lineal descendants ... take his share pursuant to Section 474.460." [5] As we have seen, Harry's lineal descendants are Appellant and his sister, Peggy Long.

Appellant postulates that inasmuch as construction 2 is a reasonable one, the trial court should have adopted it because "when a will is ambiguous, there is a preference to a construction which will prevent intestacy, rather than one which will permit it, if such construction may reasonably be given."

■■■ In evaluating Appellant's first point, we are mindful that because of the infinite variety of expression employed in wills, precedents are of less value in their construction than in many other fields of inquiry. *Housman v. Lewellen*, 362 Mo. 759, 244 S.W.2d 21, 23[6] (banc 1951). Any will is properly construed if the intention of the testatrix is found and determined. *Buschmeyer v. Eikermann*, 378 S.W.2d 468, 470[2] (Mo.1964). Such intention must be gathered from the whole will, and when the intention is found, proper construction of the will is solved. *St. Louis Union Trust Co. v. Krueger*, 377 S.W.2d 303, 304[1] (Mo. banc 1964).

■■■ We hold the trial court correctly ascertained Decedent's intention. In paragraph III of her will, Decedent recited that she and Henry owned various assets "as joint tenants with right of survivorship." She stated that upon her death, her interest in those assets "shall go to ... Henry ..., as

5. Footnote 4, *supra.*

the survivor, provided ... Henry ... shall survive me."

The only reasonable inference from paragraph III is that Decedent understood and intended that Henry acquire her interest in the jointly owned assets only if he survived her. Under construction 2, championed by Appellant, if Henry outlived Harry, but predeceased Decedent, Henry would receive all of Decedent's property (including the jointly owned assets which had become the sole property of Decedent upon Henry's death). That would be contrary to Decedent's intent as manifested in paragraph III.

Furthermore, as noted earlier, the first clause of paragraph II required both Henry and Harry to survive Decedent in order for Henry and Harry to each receive half of Decedent's property. That requirement bespeaks an intention by Decedent that her property go to only living devisees, not dead ones. Respondents aptly observe: "Why would [Decedent] say that she makes her brothers beneficiaries of her estate only if they survive her, but if one of them lives longer than the other, but still dies before she did, the one living the longest would take all of her estate. She would be leaving her estate to a person who was dead, which is exactly what she avoided in the first [clause of paragraph II]."

We hold that even if the second clause of paragraph II is ambiguous in isolation (an issue we need not decide), it is unambiguous when read in context with paragraph III and the first clause of paragraph II. In context, it is clear the second clause of paragraph II establishes a condition precedent to the devise becoming operative. The condition is that whichever brother survives the other must outlive Decedent in order to receive her property. Appellant's first point is denied.

His second point avers the trial court erred in holding paragraph II inoperative in that "the intention of [Decedent] ... was

that Henry Sweeney and Harry Sweeney or their survivors were to receive her residuary estate."

In support of that hypothesis, Appellant declares that when Decedent made her will, she had a living half-brother (James Robson) and a living half-sister (Maggie Hall).[6] Appellant argues that because Decedent ignored James and Maggie in her will, and likewise ignored Bonnie White and James Sweeney (children of Decedent's brother William Sweeney who died in 1955), it is evident Decedent intended to leave her estate to no one except her brothers Henry and Harry.

Appellant complains that the trial court, in holding paragraph II inoperative, engineered a result Decedent never intended, i.e., allowing Bonnie White, James Sweeney, and the three children of Maggie Hall (Ruth Key, Mary Jane Dierker and Dorothy Hill) to share in Decedent's estate.[7] Appellant insists that inasmuch as Henry Sweeney and Harry Sweeney predeceased Decedent, her estate should pass to Henry's and Harry's lineal descendants, and because Henry left none, the estate should pass to Harry's lineal descendants: Appellant and Peggy Long.

In addressing this theory, we note the rule that where the language in a will is clear and of well-defined force and meaning, it must stand as written and extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict the language. *First National Bank of Kansas City v. Hyde,* 363 S.W.2d 647, 653[9] (Mo. 1962). It is thus arguable that in ascertaining Decedent's testamentary intent, evidence about which of her kin were alive and which were dead when she signed her will should not be considered.

However, we need not decide that issue. Assuming, arguendo, that it is proper for us

---

6. As recounted earlier, the record shows Maggie Hall died in 1963. The month and day are unrevealed. Decedent signed her will January 22, 1963. It is possible that Maggie died earlier that month.

7. The trial court held Decedent's estate shall be distributed as follows:

| | |
|---|---|
| Appellant | 20 percent |
| Peggy Long | 20 percent |
| Bonnie White | 20 percent |
| James Sweeney | 20 percent |
| Ruth Key | 6⅔ percent |
| Mary Jane Dierker | 6⅔ percent |
| Dorothy Hill | 6⅔ percent. |

to consider the facts relied on by Appellant to support his second point, we hold those facts do not compel the conclusion advocated by him.

In addressing Appellant's first point, we held the trial court correctly determined Decedent intended: (1) Henry receive nothing from her estate unless he survived her, and (2) Harry receive nothing from her estate unless he survived her. Nothing in the will indicates that because Henry and Harry were alive when Decedent signed her will, she intended that their lineal descendants have all of her estate, to the exclusion of her other heirs, if Henry and Harry predeceased her. Appellant's second point is meritless.

Judgment affirmed.

GARRISON, P.J., and PREWITT, J., concur.